# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRENDAN KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8462 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| VILLAGE OF LEMONT, ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brendan Kelly brings this lawsuit against the Village of Lemont and Lemont police officers alleging excessive force and false arrest claims in violation of the Fourth Amendment, *see* 42 U.S.C. § 1983, and a state law malicious prosecution claim pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is defendants' motion for summary judgment brought under Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants in part and denies in part defendants' motion.

**Background**

Construing the evidence and all reasonable inferences in Brendan Kelly's favor—as required at summary judgment—Brendan and his wife Denise Kelly lived in Lemont, Illinois during the relevant time period. On November 24, 2015, Brendan worked at the Cook County Jail as a Cook County Sheriff's Correctional Officer and returned home from work after 10 p.m. Early that next day at 4:44 a.m., Denise called 911 to request an ambulance for Brendan because he was having a seizure. She informed the 911 dispatcher that Brendan had experienced a seizure in the past. A dispatch notification went out for a Lemont Fire Protection District ambulance and an "ambulance assist" went out for the Lemont Police Department. The dispatcher communicated that the "ambulance assist" was for a person having a seizure.

Defendant Officer Jason Boyer was the first to arrive at the Kelly's home before the paramedics. When he arrived, Denise and Brendan were walking to the top of the stairs near their bedroom. According to Denise, she was trying to prevent Brendan from falling down the stairs because he was thrashing and flailing. Denise testified that she tried speaking to Brendan to no avail. When Officer Boyer entered their home, Denise yelled for help and that Brendan was having a seizure. Officer Boyer yelled "stop" and announced "police." Officer Boyer then ran up the stairs and began striking Brendan in the head and body with his fist. Denise also testified that although Brendan was flailing, he did not defend himself against Officer Boyer's punches. As Officer Boyer was punching Brendan, Denise moved away and went downstairs. Officer Boyer followed. Brendan then attempted to go down the stairs, but fell. Denise repeatedly told Officer Boyer that Brendan was having a seizure and asked the officer not to hit him.

Once they were downstairs, Brendan continued to thrash and flail, after which Officer Boyer told him to stop and get to the ground. Brendan did not do so, and thus Officer Boyer continued to punch him and put him in a choke hold. Throughout this encounter, Brendan's pupils were dilated and he was non-verbal. During all this activity, Officer Boyer pulled out his Taser and shot Brendan in the chest in probe mode with the prongs attaching to Brendan's chest. After being tased, Brendan was stunned, but was still moaning and flailing.

Officer Boyer radioed for emergency assistance and defendants Officer David Gentile and Sergeant Joseph Buczyna arrived at the Kelly's home. The three officers then tackled Brendan to the floor. Officer Boyer continued to command Brendan to stop resisting while the officers handcuffed him. Meanwhile, while handcuffed and face-down on the floor, the Kelly's small poodle jumped on Brendan's back and Brendan grabbed the dog's paw. The officers yelled at Brendan to release the dog, at which time the dog bit Officer Gentile on the left hand. Officer Gentile then

used his Taser against Brendan with less force (drive-stun) than Officer Boyer had used. Denise yelled to the officers to let the paramedics into the house to sedate Brendan.

Eventually, the Lemont police officers allowed the paramedics into the house. Once Brendan was in the ambulance, a paramedic assessed him and concluded that he had no awareness of where he was, when it was, or what was happening. The paramedics took Brendan to the emergency room at Silver Cross Hospital in Lemont. Brendan was treated for his seizure and other injuries and then transferred to Loyola Hospital for further treatment. Loyola Hospital discharged Brendan into the custody of the Lemont Police Department on November 26, 2015. Brendan's discharge paperwork indicated that he was on medication for his seizure disorder and gave the police instructions "for medicine administration by law enforcement."

On February 23, 2016, a grand jury indicted Brendan for aggravated battery of Officer Boyer, resisting and obstructing a peace officer as to Officer Boyer, and resisting and obstructing a peace officer as to Sergeant Buczyna. The State's Attorney *nolle prosse'd* the criminal charges in August 2017 after the State's Attorney's Office received a written report of a doctor retained by Brendan. The report indicated that on the morning of his arrest, Brendan experienced a seizure followed by a prolonged "postictal" state associated with confusion, combativeness, and agitation and that, as a result, he was unaware of his surroundings and what he was doing and could not be held responsible for the agitation and aggressiveness he displayed with the police officers.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

3

Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

*Excessive Force Claim*

Brendan brings his Fourth Amendment excessive force claim against Officers Boyers and Gentile. "Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). Courts evaluate excessive force claims under an objective reasonableness standard, namely, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The *Graham* standard is fact-intensive, asking whether each use of force was reasonable under the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) (citation omitted).

Examining the totality of the circumstances in Brendan's favor, he has presented sufficient evidence creating a genuine issue of material fact for trial as to the objective reasonableness of Officer Boyer's repeated use of force. This evidence includes Denise making an emergency call for a medical emergency—not that a crime was being committed or that Brendan was threatening her. Officer Boyer's own incident report reflects that he was dispatched as an "ambulance assist" for a

4

person who was having seizures and that when he arrived at the Kelly's home, Denise shouted "help me, he's having a seizure." There is also evidence that Brendan was unresponsive and non-verbal. Nonetheless, Officer Boyer repeatedly punched and hit Brendan throughout the encounter, and at one point, tased Brendan in the chest. Once downstairs, Brendan continued to thrash and Officer Boyer told him to stop and get to the ground. Brendan did not do so, therefore, Officer Boyer continued to hit him. Officer Boyer hit Brendan so hard that the officer had to go to the hospital to get treatment for his hand injuries. Construed in Brendan's favor, Officer Boyer's continued punching of Brendan, including blows to the head, escalated the situation.

Although Officer Boyer contends his conduct was justified because Brendan resisted arrest, Officer Boyer ignored Denise's repeated warnings that Brendan was having a seizure. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) ("To be sure, there is evidence [plaintiff] did not obey [the officer's] commands. But his behavior is susceptible of different interpretations."). Also, Officer Boyer's assertion that he was trying to protect Denise from Brendan's threatening conduct is belied by Denise's own testimony that Brendan did not choke, grab, or threaten her. As such, examining the evidence in Brendan's favor, he has raised a triable issue of material fact that Officer Boyer's conduct was not objectively reasonable.

Next, while handcuffed and face-down on the floor, Officer Gentile then used his Taser against Brendan after he grabbed his dog. Prior to using his Taser, Officer Gentile and the officers yelled at Brendan to release the dog, at which time the dog bit Officer Gentile on the left hand. Defendants argue that Officer Gentile used his Taser because Brendan refused to stop struggling. It is clearly established law, however, that using a Taser once a suspect is subdued can constitute excessive force. *See Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 730 (7th Cir. 2013). Here, a factual dispute exists whether Brendan's struggling while subdued posed an immediate threat to the safety of the officers or others, and thus the Court cannot conclude as a matter of law that Officer

5

Gentile's use of force was objectively reasonable. *See, e.g., Smith v. Finkley*, 10 F.4th 725, 740 (7th Cir. 2021).

Defendants also contend that qualified immunity protects them from liability. "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices' on the other." *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 987 (7th Cir. 2021) (citation omitted). A qualified immunity defense depends on two factors: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (citation omitted).

Because the Court concludes that Brendan has set forth sufficient evidence raising a triable issue of material fact as to Officers Boyer's and Gentile's unreasonable use of force, the Court turns to whether the contours of Brendan's excessive force claim were clearly established in November 2015. More specifically, a police officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. ——, ——, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014). In making a qualified immunity determination, courts cannot define "clearly established" at a high level of generality, therefore, relying on *Graham* alone does not create clearly established law. *See Lopez*, 993 F.3d at 988. Instead, "[a]n appropriately defined right is clearly established if there is a closely analogous—though not necessarily identical— case identifying that right." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019).

In a similar lawsuit where the police officers knew a plaintiff was having a seizure, yet continued to treat the plaintiff as resisting arrest, the Seventh Circuit concluded that a reasonable

6

jury could have found the police officers' conduct in the face of knowing of the seizure was objectively unreasonable. *Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996). Because *Frazell* is closely analogous to the facts in this case, it is clearly established that the officers' alleged misconduct was unlawful at the time of the November 2015 incident. The Court therefore denies defendants' summary judgment motion as to Brendan's excessive force claim because he has set forth evidence raising genuine disputes of material facts for trial concerning the officers' unreasonable use of force and has pointed to an analogous case that his constitutional rights were clearly established.

*False Arrest*

Brendan also brings a Fourth Amendment false arrest claim against Officer Boyer and Sergeant Buczyna. The existence of probable cause is an absolute bar to a Fourth Amendment false arrest claim. *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021). "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (citation omitted). Courts assess probable cause objectively based on "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Id.* (citation omitted). Also, "a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Cibulka,* 992 F.3d at 638 (citation omitted).

Defendants assert that Officers Boyer and Buczyna had probable cause to arrest Brendan for aggravated battery. "Illinois follows the common law rule that any contact, however slight, may constitute a battery." *Garcia-Meza v. Mukasey*, 516 F.3d 535, 538 (7th Cir. 2008). Under Illinois law, battery against a peace officer constitutes an aggravated battery. 720 ILCS 5/12-305(d). Thus,

7

"physical contact between an arrestee and a law enforcement officer, however minor, can provide probable cause for battery." *Gill v. Village of Melrose Park*, 35 F.Supp.3d 956, 963 (N.D. Ill. 2014) (Tharp, J.).

It is undisputed that Brendan made physical contact with Officer Boyer while the officer was at the Kelly's home on an "ambulance assist," although Brendan contends he was unaware of his actions. "Whether the physical contact was intentional does not impact the existence of probable cause," *Gill*, 35 F.Supp.3d at 964, because "probable cause is based on what is known to the arresting officer at the time, not what goes on in the offender's mind." *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990). What Officers Boyers and Buczyna knew at the time of Brendan's arrest was that he was suffering from a seizure and was disoriented. Based on this evidence, Brendan argues that he was incapable of forming specific intent to support the aggravated battery charge. While a defendant's specific intent is crucial to the prosecution's ability to prove he committed aggravated battery at trial, courts allow an inference of specific intent from a defendant's conduct when police officers make quick decisions about probable cause at the time of arrest. *See Dollard v. Whisenand*, 946 F.3d 342, 360 (7th Cir. 2019). This is because "[p]olice have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states." *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994).

Under the circumstances, Officers Boyer and Buczyna had "arguable probable cause" to arrest Brendan for aggravated battery, and thus are shielded by qualified immunity, even though it was later confirmed that Brendan did not have the specific intent to commit aggravated battery. *See Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) (Arguable probable cause "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (citation omitted). In short, a "reasonable officer can have probable cause even if she turns out to be mistaken." *Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018).

8

Construing the facts in Brendan's favor, although Denise told the officers Brendan was unaware of what was going on, under controlling case law, the officers were not required to assess Denise's credibility about Brendan's specific intent or examine his intent while they were arresting him. *See Dollard*, 946 F.3d at 360. Because qualified immunity protects Officers Boyer and Buczyna from liability, the Court grants defendants' summary judgment motion as to Brandon's Fourth Amendment false arrest claim.[1]

*Malicious Prosecution*

Last, Brendan brings a state law tort claim of malicious prosecution against Officer Boyer, Sergeant Buczyna, and Detective Sergeant Thaddeus Mezyk. To establish a malicious prosecution claim under Illinois law, Brendan must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Lund v. City of Rockford, Ill.*, 956 F.3d 938, 949 (7th Cir. 2020) (quoting *Swick v. Liautaud*, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (Ill. 1996)). "The absence of any of these elements bars a plaintiff's malicious prosecution claim." *Beaman v. Freesmeyer*, 131 N.E.3d 488, 495, 433 Ill.Dec. 130, 137, 2019 IL 122654, ¶ 26 (Ill. 2019) (*Beaman II*).

Defendants focus on whether the officers had probable cause to arrest Brendan, which dovetails with the first requirement of a malicious prosecution claim, namely, whether the officers commenced or continued Brendan's prosecution. To explain, "a malicious prosecution claim against police officers is an anomaly," because "the principal player in carrying out a prosecution is not the police officer, but the prosecutor." *Washington v. Summerville*, 127 F.3d 552, 559 (7th Cir.

---

[1] The Court recognizes that the controlling qualified immunity case law in the context of Fourth Amendment false arrest claims all but eviscerates an individual's ability to bring any such claim. The Court agrees with federal district Judge Carlton Reeves' criticisms of qualified immunity, including, that "[courts] have invented a legal doctrine to protect law enforcement officers from having to face any consequences for wrongdoing." *Jamison v. McClendon*, 476 F.Supp.3d 386, 391 (S.D. Miss. 2020).

9

1997).  As such, "a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing 'some postarrest action which influenced the prosecutor's decision to indict.'"  *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017) (citation omitted); *see also Beaman II,* 131 N.E.3d at 499 ("a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors.").  Under Illinois law, the relevant inquiry is whether the police officers played a significant role in causing the commencement or continuance of the criminal proceeding.  *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 79, 2021 WL 3204481, at *10 (Ill. 2021) ("*Beaman III*"); *Beaman II,* 131 N.E.3d at 499.  Otherwise, a grand jury's indictment defeats a claim of malicious prosecution against police officers because it breaks the chain of causation.  *Colbert*, 851 F.3d at 655; *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996).

To establish that the defendant officers played a significant role in causing his prosecution, Brendan has presented evidence that Officer Boyer, Sergeant Buczyna, and Detective Sergeant Mezyk discussed the case before contacting Felony Review and then told Felony Review what charges they wanted approved.  The Felony Review Fact Sheet states that Denise Kelly was a victim and that when Officer Boyer entered the home, Brendan was choking her.  On the other hand, there was no mention of Brendan's seizure or the officers' observations that Brendan was disoriented on the Felony Review Fact Sheet.  In addition, Sergeant Mezyk testified before the grand jury in February 2016, stating that the Lemont police officers were dispatched to the Kelly's home to assist with an ambulance and that Brendan was in a physical altercation with his wife.  He also testified that when Officer Boyer attempted to separate Brendan from his wife, Brendan struck Officer Boyer with a closed fist.  Based on this evidence, Brendan maintains the officers deliberately provided false information to the prosecutors because they characterized the situation as one of domestic violence, rather than a medical emergency due to Brendan's seizure.  Indeed, Officer

10

Boyer's arrest report states the facts for probable cause as "subject resisted arrest while being arrested for domestic battery," although there had been no history of domestic violence between Brandon and Denise and that Denise did not ask the officers to press domestic abuse charges.

This evidence, construed in Brendan's favor, raises a triable issue of fact that the officers played a significant role in the commencement of Brendan's prosecution based on the officers knowingly omitting information and by providing misinformation to influence Brendan's prosecution.  *See Beaman III,* 2021 IL 125617, ¶ 83 ("It is inescapable that the independent judgment of a prosecutor will be colored by the nature of the investigation performed by the police.").  A rational jury could conclude the officers' narrative of domestic violence, and not an ambulance assist for a person having a seizure, was an attempt to bolster the seriousness of the situation due to threats of harm to a victim, and thus persuaded the prosecutor to commence criminal proceedings against Brendan.  Because Brendan has raised a triable issue of fact that the officers played a significant role in causing the commencement of his prosecution, the Court turns to the parties' probable cause arguments.

Even though the Court concluded that Officers Boyer and Buczyna had "arguable probable cause" as it related to Brendan's false arrest claim, qualified immunity does not apply to Illinois common law claims such as Brendan's malicious prosecution claim.  *See Jain v. Board of Educ. of Butler Sch. Dist. 53*, 366 F.Supp.3d 1014, 1019 n.4 (N.D. Ill. 2019) (Guzman, J.).  Accordingly, the Court must determine whether there is probable cause for each charge in Brendan's indictment.  *Holmes v. Village of Hoffman Estates,* 511 F.3d 673, 682 (7th Cir. 2007) ("probable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge").

Unlike Fourth Amendment false arrest claims, "[f]or purposes of a malicious prosecution claim, the pertinent time for making the probable cause determination is the time when the charging

document is filed, rather than the time of the arrest." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011). Evidence in the record reveals that shortly after Brendan was arrested, a paramedic assessed him as not having any awareness of where he was, when it was, or what was happening. The paramedic's November 25, 2015 report indicates that Brendan was postictal because he was coming out of a seizure. Furthermore, Brendan was released to the custody of the Lemont Police Department on November 26, 2015, and his discharge paperwork indicated that he was on medication for his seizure disorder and gave the police instructions "for medicine administration by law enforcement."

Thus, although Officers Boyer and Buczyna were not required to determine Brendan's state of mind at the time of his arrest for Fourth Amendment false arrest purposes, evidence in the record suggests that by the time Brendan was charged, the individuals commencing his prosecution were aware of his diminished capacity due to his seizure. Consequently, whether there was probable cause to arrest Brendan for the aggravated battery of Officer Boyer is a question of fact for the jury to decide due to Brendan's unawareness.

Turning to the other charges in the indictment, under Illinois law, an individual commits the crime of resisting or obstructing a peace officer when he "knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a). Based on the evidence that Brendan was disoriented and unaware of his surroundings, there is a triable issue of fact whether he "knowingly" resisted or obstructed Officers Boyer and Buczyna.

The Court therefore denies defendants' summary judgment motion as to Brendan's malicious prosecution claim. On a final note, because Brendan's Fourth Amendment excessive force and malicious prosecution claims survive summary judgment, the Court denies defendants' summary judgment motion as to Brendan's indemnification claim.

**Conclusion**

Based on the foregoing, the Court grants in part and denies in part defendants' motion for summary judgment [124]. Defendant Officers John Lauricella and Kevin Anderson are dismissed as defendants to this lawsuit.

**IT IS SO ORDERED.**

Date: 11/23/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge