IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDAN KELLY, | ) | |
| | ) | Case No. 17-cv-8462 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| VILLAGE OF LEMONT, ILLINOIS, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brendan Kelly brought this lawsuit against the Village of Lemont, Illinois, and Lemont police officers alleging an excessive force claim in violation of the Fourth Amendment and a state law malicious prosecution claim. Kelly has moved *in limine* to bar the opinion testimony of defendants' police practices expert Robert T. Johnson, a retired Illinois State Police officer, pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the following reasons, the Court, in its discretion, grants in part and denies in part Kelly's motion.

**Factual Background**

The factual background from the Court's November 23, 2021 summary judgment ruling is as follows:

Plaintiff Brendan Kelly and his wife Denise Kelly lived in Lemont during the relevant time period. On November 24, 2015, Brendan worked at the Cook County Jail as a Cook County Sheriff's Correctional Officer and returned home from work after 10 p.m. Early that next day at 4:44 a.m., Denise called 911 to request an ambulance for Brendan because he was having a seizure. She informed the 911 dispatcher that Brendan had experienced a seizure in the past. A dispatch notification went out for a Lemont Fire Protection District ambulance and an "ambulance assist"

went out for the Lemont Police Department. The dispatcher communicated that the "ambulance assist" was for a person having a seizure.

Defendant Officer Jason Boyer was the first to arrive at the Kelly's home before the paramedics. When he arrived, Denise and Brendan were walking to the top of the stairs near their bedroom. According to Denise, she was trying to prevent Brendan from falling down the stairs because he was thrashing and flailing. Denise testified that she tried speaking to Brendan to no avail. When Officer Boyer entered their home, Denise yelled for help and that Brendan was having a seizure. Officer Boyer yelled "stop" and announced "police." Officer Boyer then ran up the stairs and began striking Brendan in the head and body with his fist. Denise also testified that although Brendan was flailing, he did not defend himself against Officer Boyer's punches. As Officer Boyer continued punching Brendan, Denise moved away and went downstairs. Officer Boyer followed. Brendan then attempted to go down the stairs, but fell. Denise repeatedly told Officer Boyer that Brendan was having a seizure and asked the officer not to hit him.

Once they were downstairs, Brendan continued to thrash and flail, after which Officer Boyer told him to stop and get to the ground. Brendan did not do so, and Officer Boyer continued to punch him and then put him in a choke hold. Throughout this encounter, Brendan's pupils were dilated and he was non-verbal. Later, Officer Boyer pulled out his Taser and shot Brendan in the chest in probe mode with the prongs attaching to Brendan's chest. After being tased, Brendan was stunned, but was still moaning and flailing.

Officer Boyer radioed for emergency assistance and defendants Officer David Gentile and Sergeant Joseph Buczyna arrived at the Kelly's home. The three officers then tackled Brendan to the floor. Officer Boyer continued to command Brendan to stop resisting while the officers handcuffed him. Meanwhile, while handcuffed and face-down on the floor, the Kelly's small dog jumped on Brendan's back and Brendan grabbed the dog's paw. The officers yelled at Brendan to

2

release the dog, at which time the dog bit Officer Gentile on the hand. Officer Gentile then used his Taser against Brendan with less force (drive-stun) than Officer Boyer had used. Denise yelled to the officers to let the paramedics into the house to sedate Brendan.

Eventually, the Lemont police officers allowed the paramedics into the house. Once Brendan was in the ambulance, a paramedic assessed him and concluded that he had no awareness of where he was, when it was, or what was happening. The paramedics took Brendan to the emergency room at Silver Cross Hospital in Lemont. Brendan was treated for his seizure and other injuries and then transferred to Loyola Hospital for further treatment. Loyola Hospital discharged Brendan into the custody of the Lemont Police Department on November 26, 2015. Brendan's discharge paperwork indicated that he was on medication for his seizure disorder and gave the police instructions "for medicine administration by law enforcement."

On February 23, 2016, a grand jury indicted Brendan for aggravated battery of Officer Boyer, resisting and obstructing a peace officer as to Officer Boyer, and resisting and obstructing a peace officer as to Sergeant Buczyna. The State's Attorney *nolle prosse'd* the criminal charges in August 2017 after the State's Attorney's Office received a written report of a doctor retained by Brendan. The report indicated that on the morning of his arrest, Brendan experienced a seizure followed by a prolonged "postictal" state associated with confusion, combativeness, and agitation and that, as a result, he was unaware of his surroundings and could not be held responsible for the agitation and aggressiveness he displayed with the police officers.

**Expert Opinions**

In the present motion, Brendan does not challenge Johnson's qualifications. Instead, he challenges the following opinions set forth in Johnson's expert report:

1. The officers' actions in responding to and handling the call requesting Emergency Medical Services ("EMS") was appropriate and in accord with accepted practices, standards, and training within the law enforcement field.

3

2. The Lemont Police Department officers' use of force was consistent and in accord with nationally accepted policies, practices, standards, and training within the field of law enforcement.

3. The charging of Brendan Kelly was appropriate and reasonable under the circumstances known to the officers.

**Legal Standard**

Rule 702 and *Daubert* require district judges to act as gatekeepers to ensure that proposed expert testimony is both reliable and relevant. *Von Duprin, LLC v. Major Holdings, LLC*, 12 F.4th 751, 772 (7th Cir. 2021). When determining reliability, the Court's role is to assess if the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *United States v. Godinez,* 7 F.4th 628, 637 (7th Cir. 2021). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702(a).

A district court's gatekeeping evaluation of expert testimony does not take the jury's place in deciding the issues of accuracy or credibility. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 438 (7th Cir. 2019). Once the district court determines that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596). The expert's proponent has the burden of establishing the admissibility of his opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

**Analysis**

The Court first turns to Johnson's third opinion, namely, that the charging of Brendan Kelly was appropriate and reasonable under the circumstances known to the officers. Specifically, Johnson opines that the police officers had a reasonable basis to arrest Brendan and seek criminal

charges against him. Johnson's opinions speak to the ultimate issue of whether the officers' conduct was objectively reasonable under the circumstances known to the officers as set forth in *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Although "[e]xpert opinions on ultimate issues are not categorically impermissible," *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017), "Rules 702 and 704 'prohibit experts from offering opinions about legal issues that will determine the outcome of a case.'" *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (citation omitted).

Here, Johnson's third opinion is a legal conclusion that would determine the outcome of the case—whether the officers' conduct was objectively reasonable under the circumstances known to them. This is a question for the jury to decide after the Court has instructed the jurors on the law. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the fact in evidence"). In addition, Johnson's testimony is not necessary to assist the jury to either understand the evidence or determine a fact in issue. *See* Fed.R.Evid. 702(a). The Court grants this aspect of Brendan's *Daubert* motion.

Next, the Court examines Johnson's first expert opinion in which he opines that the officers' actions in responding to and handling the call requesting Emergency Medical Services ("EMS") was appropriate and in accord with accepted practices, standards, and training within the law enforcement field. In his *Daubert* motion, Brendan first argues that Johnson adopts Officer Boyer's version of the events and did not address Denise's description. Brendan's argument is misplaced because "[t]here is nothing inappropriate about [an expert's] reliance on an assumed set of facts provided by plaintiffs' counsel, so long as those facts are consistent with evidence that will be admitted." *Simmons v. City of Chicago*, No. 14 C 9042, 2017 WL 3704844, at *10 (N.D. Ill. Aug. 28, 2017) (Kennelly, J.) (citing *Williams v. Illinois*, 567 U.S. 50, 57, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012)

5

(plurality opinion)). Here, Johnson did more than assume facts provided by counsel, he reviewed and discussed parts of Denise Kelly's deposition testimony in his report and at his July 2020 deposition.

That said, Johnson's conclusion that Brendan could have been suffering from a reaction to alcohol, drugs, or mental illness finds no support in the record. Indeed, Johnson admitted at his deposition that there is no evidence supporting this conclusion. An expert may assume facts as stated above, but "Rule 703 requires the expert to rely on "facts or data," as opposed to subjective impressions." *Brown v. Burlington N. Santa Fe Ry. Co.,* 765 F.3d 765, 772 (7th Cir. 2014). Because defendants—as proponents of Johnson's expert testimony—have not pointed to evidence in the record supporting Johnson's speculative conclusion, any such testimony has little probative value. And, whatever probative value it has is substantially outweighed by unfair prejudice and juror confusion. *See* Fed. R. Evid. 403. The Court grants this aspect of Brendan's motion.

Brendan also takes issue with the fact that Johnson relied on two provisions of the International Associate of Chiefs of Police ("IACP") Model Policy that were outdated. Brendan, however, offers no evidence or argument that the later version of the IACP Model Policy differed from the earlier version Johnson relied upon. Accordingly, at trial, Brendan may cross-examine Johnson on any disparities. The Court, however, agrees with Brendan that Johnson's list of six factors comprising the protocols for police officers dealing with crisis situations on page 10 of Johnson's report are not based on any identifiable professional standards. Without an explanation of how these are sound or recognized professional standards, Johnson's opinion testimony that the officers followed these standards is not helpful to the jury. *See Jimenez,* 732 F.3d at 721-22. The Court grants Brendan's *Daubert* motion in this respect.

The Court turns to Brendan's arguments in relation to Johnson's second opinion that the Lemont Police Department officers' use of force was consistent and in accord with nationally

accepted policies, practices, standards, and training within the field of law enforcement. Again, Brendan argues that Johnson relies on the same one-sided story ignoring Denise's description of what happened at the Kelly's home. As discussed, Brendan's argument does not go to the admissibility of Johnson's expert opinion testimony, but to the underlying assumptions that he made, which are subject to cross-examination and presentation of contrary evidence. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321 (N.D. Ill. 2008) (Cole, J.) ("The curative in cases involving conflicting testimony is not exclusion of opinions that assume the truthfulness of a particular version of facts, but cross-examination and jury instructions (that make clear that the expert is not deciding credibility), as the Court stressed in *Daubert*.").

Next, Brendan challenges Johnson's opinion based on the ("IACP") Model Policy—Electronic Control Weapons ("ECW"). In particular, Brendan maintains that Johnson's recitation of the protocol concerning the use of Tasers would not be helpful to the jury because there is nothing technical or complicated about his assessments. The Court, however, contends that the deployment procedures discussed by Johnson on page 15 of his expert report are most likely not within the jury's common knowledge and that Johnson's additional expertise in this area will add value to the discussion. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020). Rather, the description of the IACP Model Policy on ECW will help the jury understand Johnson's opinions about the use of Tasers that are part of Brendan's excessive force claim.

Brendan also challenges Johnson's opinion regarding Officer Gentile's use of his Taser as unsupported because Johnson admitted at his deposition that he has never seen a situation where an officer released a Taser in stun mode to release a dog. Although Johnson is not aware of this exact same situation, *Daubert* does not require such exactitude, but only that Johnson's testimony is based on his extensive and specialized experience. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("no one denies that an expert might draw a conclusion

7

from a set of observations based on extensive and specialized experience."). The Court therefore denies this aspect of Brendan's motion.

On a final note, although Brendan argues that some of Johnson's opinions usurp the jury's function to make credibility determinations, he fails to sufficiently explain how any of the expert opinions amount to credibility determinations. Furthermore, defendants maintain that Johnson will not testify to credibility determinations at trial. It is defendants' responsibility to instruct their expert witness on this matter, along with the fact that Brendan is no longer bringing a false arrest claim.

**Conclusion**

Based on the foregoing, the Court, in its discretion, grants in part and denies in part plaintiff' Daubert motion [170].

Date: 2/11/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge